UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Darrin Scott Rick,

    Petitioner,

v.

Jodi Harpstead,
*Commissioner,*
*Minnesota Department of Human Services*,

    Respondent.

Civ. No. 19-2827 (NEB/DTS)

**REPORT AND RECOMMENDATION
& ORDER**

Lance R. Heisler, Lampe Law Group, LLP, 105 E. 5th Street, Northfield, Minnesota 55057, for Petitioner.

Ali Patrick Afsharjavan and Matthew Frank, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1400, St. Paul, Minnesota 55101; Theresa M. Couri, Hennepin County Attorney's Office, C-2000 Government Center, 300 South Sixth Street, Minneapolis, Minnesota 55487, for Respondent.[1]

## INTRODUCTION

Petitioner Darrin Scott Rick challenges his continued involuntary confinement at the Minnesota Sex Offender Program's Moose Lake, Minnesota facility. He argues new facts, not discoverable through due diligence at the time of his civil commitment hearing, renders his initial commitment a fundamental miscarriage of justice. Alternatively, he argues the same new facts make his continued involuntary confinement constitutionally

---

[1] Because Rick's first ground for habeas relief collaterally challenges his initial civil commitment and his second ground challenges his ongoing commitment, the Court allowed the Respondent to file two separate responses. Order, Nov. 26, 2019, Dkt. No. 10.

untenable. Because Rick failed to exhaust this second ground in state proceedings, but had good cause for his failure, his petition is stayed.

## FINDINGS OF FACT

**I.  Rick's Commitment**

In 1993, Rick pleaded guilty to four counts of criminal sexual conduct, each charge involving a minor victim. Resp't's (Hennepin County) App. 3, Dkt. No. 13 [hereinafter HCA]. He was sentence to 180 months. *Id.* While in prison, Rick took part in a sex offender treatment program, but withdrew after about 16 months, citing conflict with another inmate in the program. *Id.* at 6. As Rick's release date in early 2004 approached, the Minnesota Department of Corrections assessed Rick, but did not recommend that he be civilly committed. *Id.* at 2. Hennepin County nonetheless commenced civil commitment proceedings against Rick in December 2003. *Id.* at 1.

During the commitment hearing, the trial court heard testimony from over a dozen witnesses, including three psychologists who also submitted written reports. *Id.* at 2. Both court-appointed psychologists, Dr. Roger Sweet and Dr. Thomas Alberg, concluded Rick met Minnesota's statutory definition for a Sexually Dangerous Person, but not for a Sexual Psychopathic Personality. *Id.* at 10-12; Aff. of Lance R. Heisler Ex. 5, at 27, Dkt. No. 5. These psychologists also concluded that less restrictive alternatives to the Minnesota Sex Offender Program's high-security facilities would be sufficient to treat Rick. HCA 11-12. Hennepin County's retained expert, psychologist Dr. James Alsdurf, agreed Rick qualified as a Sexually Dangerous Person, but not as a Sexual Psychopathic Personality. *Id.* at 13. Dr. Alsdurf disagreed with the court-appointed psychologists, asserting the only

appropriate treatment currently available for Rick was at MSOP. *Id.*; Heisler Aff. Ex. 9, at 16.

The trial court concluded Rick met the definition for a Sexually Dangerous Person and committed him to MSOP, but stayed commitment on the conditions that he comply with the terms of his conditional release and successfully complete a designated outpatient sex offender treatment program. HCA 14. However, Hennepin County appealed and the Minnesota Court of Appeals reversed the stay of commitment, both because the County had not agreed to the stay, as required by statute, and because the record did not establish that Rick had actually been accepted into the proposed outpatient program. *Id.* at 54-55.

Following the court of appeals' decision, the trial court held an "indeterminate commitment" hearing, where it determined there was no change in Rick's diagnosis but received further evidence regarding a less restrictive alternative. *Id.* at 57. Although the outpatient program the trial court had originally identified would not accept Rick "because of social and political pressure[,]" the outpatient sex offender treatment program at the University of Minnesota Program in Human Sexuality agreed to accept him. *Id.* at 58-60. However, Dakota County would not approve of Rick living with his parents in Hastings, Minnesota, immediately following his release, and instead required he live in a halfway house for a minimum of 90 days. *Id.* at 61-62. But the Minnesota Department of Corrections had only approved 60 days of stay at the identified halfway house, and the house would not accept Rick as a "private pay" client for the additional 30 days not approved by the DOC. *Id.* at 62-63. The trial court therefore concluded Rick had not

shown that the proposed less-restrictive plan was "presently available" and so committed him to MSOP indefinitely. *Id.* at 64.

Rick appealed his indeterminate commitment. He argued both that there was insufficient evidence to establish he was a sexually dangerous person, specifically arguing he was not highly likely to reoffend, and that he had proven by clear and convincing evidence that a less restrictive alternative program was available. *Id.* at 67. The Minnesota Court of Appeals rejected both arguments and affirmed the commitment order. *Id.* at 126-28. The Minnesota Supreme Court denied further review. *Id.* at 129.

## II.   Rick's Post-Commitment Challenges

Rick has twice availed himself of post-commitment proceedings, once through a special civil commitment review process and once through a state habeas petition.

Minnesota adjudicates the continued confinement of MSOP clients through a Special Review Board. Minn. Stat. § 253D.27. The Special Review Board is a three-member panel, unaffiliated with the Minnesota Department of Human Services, that meets at least every six months to consider petitions for reductions in custody, which includes "transfer from a secure treatment facility, discharge, and provisional discharge." *Id.* at § 253B.18; *see also id.* at §§ 253D.29-.31 (supplying factors to consider for transfer, discharge, and provisional discharge). If unsatisfied with the Board's recommendation, the petitioner may seek a rehearing and reconsideration from a judicial appeal panel, which reviews the petition de novo. *Id.* at § 253D.28; *id.* at § 253B.19, subd. 1. A party may then appeal the judicial appeal panel's order to the Minnesota Court of Appeals. *Id.* at § 253D.28, subd. 4; *id.* at § 253B.19, subd. 5.

In early 2011, Rick petitioned the Special Review Board for a provisional discharge from MSOP or, alternatively, transfer to Community Preparation Services.[2] *See* HCA 159. The Board recommended Rick's request for provisional discharge be denied but recommended his request for transfer to CPS be granted. *Id.* at 159-60. Rick asked the appeal panel to reconsider the denial of provisional discharge and the Commissioner of DHS did the same for the transfer recommendation. *Id.* at 160. After several continuances of the hearing, Rick voluntarily dismissed his appeal. *Id.* at 161. The Commissioner continued to appeal the Special Review Board's recommendation that Rick be transferred but, after several more continuances of the hearing, Rick withdrew his request for a transfer to CPS on the advice of counsel. *Id.* at 161-62; Pet. 3, Dkt. No. 1.

In 2015, while his petition for reconsideration with the judicial appeal panel was pending, Rick filed a habeas petition in Minnesota state court. He challenged the constitutionality of Minnesota's civil commitment statutes as applied, and argued they violated constitutional prohibitions against both double jeopardy and ex post facto laws. HCA 134, 154; Pet. 2. The district court denied Rick's petition. HCA 153. Rick did not appeal the district court's denial, explaining in his present petition that the constitutionality of the statutes was already being challenged in the *Karsjens* litigation, of which he was a class member. Pet. 3.

### III.    The New Forensic Report

After meeting with Rick at MSOP, Rick's counsel consulted with Amy Phoenix, PhD, a forensic psychologist. Aff. of Darrin Scott Rick ¶ 4, Dkt. No. 4; Heisler Aff. Ex. 8.

---

[2] CPS is MSOP's transitional phase for committed persons who have completed the first four phases of treatment. Patients in CPS live in a halfway house outside MSOP's St. Peter facility. HCA 61.

After reviewing records and interviewing Rick, Dr. Phoenix issued a forensic report in April 2019. Heisler Aff. Ex. 7. Although she acknowledges that the actuarial risk assessment tools the previous psychologists used generally "were appropriate for that period in time," Dr. Phoenix explains that subsequent research suggests those tests overestimated the probability of recidivism by sex offenders and that failure to complete treatment is not associated with markedly higher chances of recidivism, as the prior evaluators had assumed. *Id.* at 6-8, 12. Dr. Phoenix also assessed Rick's current risk of sexual recidivism with updated tests. *Id.* at 15-19. She estimated his likelihood of re-offense within five years to be between 5.6% and 6.8%. *Id.* at 26.

Both court-appointed evaluators from Rick's commitment reviewed Dr. Phoenix's report. Dr. Alberg states he now believes Rick's commitment as a sexually dangerous person "was inappropriate in 2004" and that Rick "would not meet the criteria to be committed in 2019 . . . ." Heisler Aff. Ex. 4, at 2. Similarly, Dr. Sweet opines that he "could have avoided the frustrating and exasperating process of arguing for a Stay of Commitment, because [he] would have opined that Mr. Rick did not meet the statutory criteria necessary for commitment as a Sexually Dangerous Person." Heisler Aff. Ex. 6, at 4.

**CONCLUSIONS OF LAW**

In his current petition, Rick offers two grounds for habeas relief. First, he argues new evidence—namely, Dr. Phoenix's report—shows the actuarial tools and clinical assumptions about sex offender recidivism used at the time of his commitment hearings were so fundamentally flawed as to violate his right to due process under the Fourteenth Amendment (Ground One). Second, even if his initial commitment was constitutional,

6

Rick contends the new evidence renders his continued involuntary commitment unconstitutional (Ground Two). Rick has not exhausted his state remedies for his second ground. However, because dismissal without prejudice in this instance would be with prejudice in effect, the Court will stay this Petition so Rick may exhaust his state remedies as to Ground Two.

## I. Legal Standard

28 U.S.C. § 2254 governs this Court's review of Rick's habeas petition. Federal courts "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A prisoner's habeas petition challenging a state court's determinations on the merits shall not be granted unless the state court's actions:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Generally, "[b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations omitted); 28 U.S.C. § 2254(b)(1). "[T]he prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature

of the claim." *Id.* This ensures "state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When a habeas petition presents both exhausted and unexhausted claims, often called a "mixed petition," a court must usually dismiss the entire petition without prejudice so the prisoner can take the unexhausted claims through the proper state proceedings. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). However, a court, upon finding good cause for the failure to exhaust, may stay the habeas petition instead. *Rhines v. Weber*, 544 U.S. 269, 278 (2005).

## II.   Rick's Mixed Petition

Rick has brought a mixed petition to this Court. Rick has not exhausted Ground One, but only because there is no process for him to do so. Harpstead acknowledges "Rick could not present to the [judicial appeal panel] the precise claim he makes in Ground One" because both the panel and the Minnesota Court of Appeals have held the panel's jurisdiction does not include challenges to the original commitment. Mem. Resp't (Hennepin Cty) 38, Dkt. No. 15 (citing *In re Benson*, 2003 WL 139397, at *3 (Minn. Ct. App. Jan. 21, 2003)). Yet, the Minnesota Supreme Court has held the judicial appeal panel process to be "the exclusive remedy for patients committed as SDPs and SPP seeking a transfer or discharge[,]" so they cannot seek to vacate the commitment order under Minnesota Rule of Civil Procedure 60.02. *In re Lonergan*, 811 N.W.2d 635, 642 (Minn. 2012); *see also In re Hand*, 878 N.W.2d 503, 507 (Minn. Ct. App. 2016). Without a state process to exhaust his specific claim, Rick may properly bring it to federal court. 28 U.S.C. § 2254(b)(1)(B)(i); *see also Dixon v. Dormire*, 263 F.3d 774, 777 (8th Cir. 2001)

(explaining "the exhaustion doctrine turns on an inquiry into what procedures are 'available' under state law.") (internal quotations omitted).

Rick's second ground for relief is a different matter. He argues in Ground Two that, even if his original commitment satisfied due process, the new evidence shows he does not currently meet the definition for a sexually dangerous person and so his continued commitment is unconstitutional. But Rick failed to raise this ground for relief through the judicial appeal panel before bringing it to federal court. Minnesota provides involuntarily committed individuals, including those committed as sexually dangerous persons, a process for obtaining a full discharge from commitment—the same relief Rick seeks in his current petition.[3] *See* Minn. Stat. § 253D.27; *id.* at § 253B.18. Other courts in this District have held petitioners must exhaust a claim like Rick's through that process. *E.g.*, *Friend v. Piper*, Case No. 17-cv-4356 (SRN/HB), 2018 WL 4017671, at **3, 6-7 (D. Minn. Jul. 11, 2018), *R&R adopted*, 2018 WL 4011568 (D. Minn. Aug. 22, 2018). Although Rick previously sought a provisional discharge or transfer to CPS, nothing in the record shows he ever sought a full discharge. And because the statute places no limitations on when a petitioner may seek full discharge—other than he must wait six months between attempts—Ground Two, though unexhausted, is not procedurally defaulted. *Id.* at § 253D.27, subd. 2.

Rick contends Minnesota's review process is inadequate (and so he should not have to exhaust) but his arguments fall short. First, Rick notes the Minnesota statute

---

[3] Contrary to Rick's bare assertion, the judicial appeal panel may consider constitutional arguments embraced by its jurisdiction over reductions in custody. *See Spartz v. Jesson*, 2014 WL 7344385, at *5 (Minn. Ct. App. Dec. 29, 2014) (declining to consider constitutional challenges to the civil commitment statute raised for the first time on appeal from the judicial appeal panel).

9

requires him to show he can make an acceptable adjustment back to open society, *id.* at § 253D.31, which is an extra burden he would not have to satisfy if he did not meet the criteria for commitment initially. Although this poses a problem for exhausting his first ground, which challenges the constitutionality of his initial commitment, it is no impediment to a challenge to his continued commitment. In *Karsjens v. Piper*, the Eighth Circuit reversed the district court and held Minnesota's discharge criteria do not violate due process, despite being more onerous than the admission criteria, because they rationally relate "to the State's legitimate interest of protecting its citizens from sexually dangerous persons . . . ." 845 F.3d 394, 408-11 (8th Cir. 2017). Rick's sweeping claim that his two grounds for habeas relief are intertwined, though perhaps true, does not change the fact that Minnesota may impose, without running afoul of the Constitution, different criteria for initial commitment than for discharge.

Next, Rick notes Minnesota requires a provisional discharge plan to be very specific and requires a petitioner seeking full discharge to show specific conditions exist to both protect the public and "assist the committed person in adjusting to the community." Minn. Stat. § 253D.31. He contends these are significant obstacles to release and put him at the mercy of MSOP, which is not obligated to provide such assistance with any haste. But, again, Minnesota may impose more onerous requirements for discharge than for initial commitment. *Karsjens*, 845 F.3d at 408-11. Moreover, Rick conflates the requirements for provisional discharge, which requires a thorough plan created with MSOP's input, Minn. Stat. § 253D.30, with those for full discharge, which only requires he show specific conditions exist to protect the community and help him adjust to living in the community. Rick has created detailed plans to prevent relapse and re-offense, Rick

10

Aff. Exs.13-14, and Dr. Phoenix discusses Rick's family support at length in her forensic report, Heisler Aff. Ex. 7, at 13-14, 22-23. In sum, the discharge standard is not the insurmountable barrier Rick claims it to be.

Despite having evidence he could present to the special review board and appeal panel, Rick contends such an exercise would still be futile, and the process is facially inadequate, because very few committed individuals have received full discharge. This argument is unavailing. Twelve individuals have been fully discharged as of June 30, 2020, and 30 more have been provisionally discharged. Minnesota Sex Offender Program Statistics, https://mn.gov/dhs/people-we-serve/adults/services/sex-offender-treatment/statistics.jsp (last accessed Jul. 20, 2020). Rick suggests these numbers are statistically insignificant, given the over 700 clients in MSOP facilities. But he offers no authority for the proposition that a remedial process must release a certain percentage of petitioners to be constitutionally sound. There may be many legitimate reasons why so few individuals have secured full discharge that are not captured by raw numbers.[4] In fact, Rick's assertions of futility are belied by his own experience. The special review board recommended granting Rick's request for a transfer to Community Preparation Services, but Rick withdrew his request before the judicial appeal panel could decide the appeal.  Because Rick has not shown Minnesota's remedial process is so deficient as to be no process at all, he must exhaust that process before bringing Ground Two in a federal habeas petition.

---

[4] Even the numbers provided are inadequate for meaningful analysis, as Rick compares the number of full discharges against the entire MSOP population, rather than against the number of individuals who have sought full discharge.

11

**III.     Appropriateness of a Stay**

Because Rick has brought a petition with an unexhausted claim, this Court would normally recommend dismissal without prejudice. *See Rose*, 455 U.S. at 522. But in this case, such action is tantamount to dismissing the petition with prejudice. A brief stay is appropriate.

A person in custody under a state-court judgment has one year from, among other triggering events, "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" to bring his habeas claims in federal court. 28 U.S.C. § 2244(d)(1). If the person seeks review of the pertinent judgment or claim in appropriate state proceedings, any time while that application is pending is not counted. *Id.* at § 2244(d)(2). The filing of a federal habeas petition, however, does not toll the one-year statute of limitations. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). Assuming—generously—that Rick could not have discovered the factual predicate of his claims before Dr. Phoenix's report in April 2019, it is now July 2020. Even if his claims are not time-barred for the reasons Harpstead suggests, they would be if Rick tried to refile his petition if it were dismissed now.

In *Rhines v. Weber*, the Supreme Court recognized that the interplay between the statute of limitations and total exhaustion requirement can lead to a potentially unjust result: dismissal of a timely but incompletely exhausted petition *after* the one-year statute of limitations has run, leaving the petitioner no opportunity to exhaust and re-file. 544 U.S. at 275-76. To militate against severe injustice, a district court may stay, rather than dismiss, a petition if the court "determines there was good cause for the petitioner's failure

to exhaust his claims first in state court" and any unexhausted claim is not plainly meritless. *Id.* at 277.

When he received Dr. Phoenix's forensic report in April 2019, Rick saw a basis to challenge his original commitment. Because the judicial appeal panel does not entertain challenges to the original commitment decision and Minnesota does not permit such collateral attacks in habeas proceedings, *see Minnesota ex rel. Thomas v. Rigg*, 96 N.W.2d 252, 257 (Minn. 1959), Rick had no state process to exhaust Ground One. But, as evidenced by his earnest argument that the "actual innocence" exception applies to civil commitments, Rick recognized Ground One may be time barred because the "improved" recidivism statistics Dr. Phoenix uses in her report have been available for several years. Each day that passed without filing a petition would only weaken any argument to the contrary.

But Dr. Phoenix's report identified another challenge to Rick's commitment, as she concluded he does not presently meet the definition of a Sexually Dangerous Person. As explained above, this ground could be pursued through an available state remedial process. However, any petition for discharge based on Ground Two would not toll the time accruing to Ground One. 28 U.S.C. § 2244(d)(2) (tolling only "with respect to the pertinent judgment or claim").

Rick thus faced a Catch-22. He could spend months—or longer—exhausting Ground Two while possibly undermining his argument that he diligently brought Count One in a timely manner. Or he could file a petition raising only Ground One, while also seeking relief on Ground Two in state proceedings. He would be fighting on two fronts simultaneously with little clear benefit, as this strategy would open him up to additional

challenges under the bar against second or successive habeas petitions. *See id.* at § 2244(b)(2). There is no evidence to suggest Rick's failure to exhaust Ground Two stemmed from "intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278. To the contrary, it appears he saw no good path and picked what he viewed as the least terrible route.

This Court cannot say Ground Two is plainly meritless. Several psychologists now opine that Rick is not a Sexually Dangerous Person, including two who previously testified that he met the statutory definition. Because the total exhaustion requirement was not designed to "unreasonably impair the [petitioner's] right to relief[,]" *Lundy*, 455 U.S. at 522, Rick's petition should be stayed, rather than dismissed.

The indefinite nature of Rick's commitment buttresses this Court's conclusion that a stay is appropriate. In enacting the one-year statute of limitations, Congress intended to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." *Rhines*, 544 U.S. at 276. But the State's interest in finality is uniquely weak here because there is nothing "final" about Rick's indefinite commitment. His continued involuntary commitment is constitutional only so long as he is both dangerous and mentally ill. *See Foucha v. Louisiana*, 504 U.S. 71, 77 (1992). Petitions such as Rick's present unique constitutional concerns not normally seen in the criminal context, and overly dogmatic application of some habeas rules may render uniquely unjust results in such cases.

Still, any stay of Rick's petition cannot itself be indefinite. He shall have sixty days from the date of this R&R and Order to either commence appropriate state proceedings on Ground Two or amend his petition to eliminate the unexhausted claim.

## RECOMMENDATION

For the reasons explained above, the Court RECOMMENDS THAT: Respondent Jodi Harpstead's Motion to Dismiss the Petition [Dkt. Nos. 12, 16] be DENIED WITHOUT PREJUDICE.

## ORDER

For the reasons explained above the Court hereby ORDERS THAT:

1. This Petition is STAYED except for objections and appeals of this R&R and Order.

2. Rick shall have 60 days from the date of this Order to either commence appropriate state proceedings on Ground Two or to amend his petition to remove the unexhausted claim.

Dated: July 24, 2020                    s/David T. Schultz
                                        DAVID T. SCHULTZ
                                        U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).